**TELEPROMPTER OF ERIE, INC., a corporation, Plaintiff,**

**v.**

**The CITY OF ERIE, a municipal corporation, et al., Defendants.**

**Civ. A. No. 81–17 ERIE.**

United States District Court,
W.D. Pennsylvania.

Oct. 25, 1983.

William H. Burke, William H. Eckert, Erie, Pa., Gregory M. Harvey, Michael R. Lastowski, Morgan, Lewis & Bockius, Philadelphia, Pa., for Teleprompter of Erie, Inc.

John R. Wingerter, Erie, Pa., for City of Erie and Council City of Erie.

Harold Schmidt, Pittsburgh, Pa., Frank Kroto, Jr., Erie, Pa., for Erie Telecommunications.

## MEMORANDUM ORDER

WEBER, District Judge.

In anticipation of a lengthy trial in this matter, the Court issued an Order on October 18, 1983 instructing the parties to coordinate their proofs in a way to facilitate the efficient presentation of the evidence. The Court also raised, *sua sponte*, its concern that among the witnesses listed by the parties there appeared the names of lawyers either previously or presently associated with counsel of record. The Court indicated it would consider this matter carefully to avoid the existence or the appearance of a conflict. A hastily scheduled conference of counsel was held October 20, 1983, with plaintiff's Philadelphia counsel participating by conference phone.

█ Attorneys James McDonald and Donald Rogala are listed as potential witnesses in the pretrial narratives filed by one or more of the parties.[1] McDonald is a partner of the defendant Erie Telecommunications, Inc.'s local counsel John Quinn, Jr. (in the firm of Quinn, Gent, Buseck & Leemhuis, Inc.). It was determined at the conference that counsel for the defendant Mr. Quinn would withdraw to avoid the appearance of an impropriety or of a conflict. Accordingly, we hereby ORDER the same and counsel for the defendant Erie Telecommunications, Inc. will retain the services of an alternative local counsel in accordance with the requirements of local rules.

Attorney Rogala is the former City Solicitor responsible for the conduct of negotiations which led to the award of the cable franchise and eventually to this lawsuit. He is currently a *de facto* partner sharing expenses but not fees with the attorney of record for the defendants City of Erie and Council of the City of Erie, John Wingerter. At no time has Mr. Rogala participated in the proceedings currently before this Court on behalf of the City defendants. We note that this matter might be one easily resolved were the matter to be tried before the Court. Counsel for the plaintiff Teleprompter of Erie, Inc. has indicated that it is unlikely the plaintiff would be willing to waive its right to trial by jury. And a jury may view an attorney as possessing special knowledge of a case and accord his testimony greater weight in light of his relationship with counsel of record. With that in mind, and in light of the fact that Mr. Rogala appears to be a lynchpin in the present controversy, we must address the issue of a potential conflict arising from Mr. Wingerter's involvement as counsel for the City defendants.

Disciplinary Rule 5–102(A) and (B) of the Code of Professional Responsibility (hereinafter "D.R. 5–102(A) and (B)") provide as follows:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in D.R. 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

█ The Rule is designed to protect the interest of all parties and the reputation of the legal profession. *See*, 6 J. Wigmore, *Evidence* § 1911 (Chadbourn rev. ed. 1976).

---

1. We note that Mr. Rogala appears as a witness in the pretrial narratives of all parties to the action. His pivotal role in this case was recognized by this Court in its Memorandum Opinion of July 18, 1983, at pp. 29–33.

■ The prime factor to be considered by the Court in determining when counsel should withdraw is whether a firm member ought to be called as a witness (D.R. 5–102(A)), or whether, if called by another party, the testimony of a lawyer is likely to be prejudicial to the client. (D.R. 5–102(B)). Whether a lawyer may actually testify is not controlling as to the application of D.R. 5–102(A). *MacArthur v. Bank of New York*, 524 F.Supp. 1205 (S.D.N.Y. 1981). We find that these factors are clearly satisfied in the instant case where Mr. Rogala occupied a critical role in the award of the cable franchise. The City defendants have included Mr. Rogala as a prospective witness and by its terms, D.R. 5–102(A) makes withdrawal mandatory and precludes any choice on the part of a client between the attorney's testimony and his representation.[2] The obligations of the Rule, moreover, cannot be overcome by equitable defenses such as laches, waiver or estoppel. *MacArthur*, 524 F.Supp. at 1210.

The Court finds that a more difficult question is presented as to whether Mr. Rogala is actually Mr. Wingerter's partner or a member of the same firm. We find that an adequate evidentiary basis for our analysis exists in the deposition testimony of Mr. Rogala. Under cross-examination by plaintiff's counsel, Mr. Rogala testified as follows:

(By Mr. Harvey)

Q. Is this a partnership or is it some other form of organization?

A. Well, I guess it all depends on what you mean by a partnership. If you're referring to what I always envisioned as a partnership, where you each receive fees and put those into a common fund and then pay your expenses and then share in that common fund; then we're not that type of a partnership. We each share the expenses on an equal basis, as far as the operation of the office—the library, the copy machines, secretarial personnel. So in that sense, I guess we're kind of a partnership of associates, in that we each maintain our individual practices within the group.

Q. Are pleadings signed in any firm name or are pleadings of yourself, Mr. Wingerter and so on, in your private litigation signed only by individuals?

A. They are signed by individuals under a firm name.

Q. What is the firm name?

A. Carney, Good, Brabender and Walsh.

Q. And you and Mr. Wingerter and the other people whose names are listed at the front door of the building all have the same relationship to each other—that is, there is no distinction between partners and associates?

A. No.

(Deposition of Donald Rogala, January 26, 1982, pp. 6–7).

■ We find from the foregoing that for present purposes Mr. Rogala and Mr. Wingerter have functioned as members of the same firm and have acted as *de facto* partners. Accordingly, we find that the weight of the authority and the dictates of D.R. 5–102(A) require that counsel for the City defendants, Mr. Wingerter, withdraw. We also consider the likelihood of prejudice to be extreme when Mr. Rogala's testimony may be relied upon to demonstrate improprieties in the City's award process. The strictures of D.R. 5–102(B), therefore, also require Mr. Wingerter's withdrawal.

We note that D.R. 5–102(B) forbids a party from calling a witness affiliated with opposing counsel in order to deprive that party of its chosen representative. *See, J.P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357 (2d Cir.1975). A failure to raise such ethical issues may be met with a levy of costs on the guilty party. We find that this is not the case here where the Court itself raised the issue *sua sponte;* where the City defendants have listed the witness themselves and thereby invite the sanctions

---

**2.** Similarly, Attorney McDonald has been included in the witness list of the defendant Erie Telecommunications, Inc.

of D.R. 5–102(A); and where the responsibility for avoiding a transgression of D.R. 5–102(A) falls upon the party likely to run afoul of the Rule.

Finally, we find nothing in Disciplinary Rule 5–101(B)(4) (hereinafter "D.R. 5–101(B)(4)") that compels the Court to stay its hand.[3] This Rule states that under circumstances where a substantial hardship is likely to result a lawyer or a member of his firm may testify. We do not think the possibility of delay falls within the ambit of the hardship anticipated by the Rule. We find the Court's reasoning in *MacArthur* compelling on this point:

> ... if the expense and delay routinely incident to disqualification satisfied the substantial-hardship exception, that exception would soon swallow the rule.

*MacArthur*, 524 F.Supp. at 1210. *See also, Brotherhood Railway Carmen of the United States and Canada*, 549 F.Supp. 780, 790 (D.Del.1982).

Local counsel for Erie Telecommunications, Inc., has provided the Court copies of the opinions in *Freeman v. Kulicke & Soffa Industries, Inc.*, 449 F.Supp. 974 (E.D. Pa.1978); and *Ford Motor Credit Co. v. Security Peoples Trust Co.*, C.A. Nos. 76–26 Erie and 76–35 Erie. We find nothing in these opinions to change our view that a withdrawal of counsel is required in the instant case. Judge Knox in *Ford Motor* dealt with similar circumstances and concluded that disqualification was not required where it was not apparent that the lawyer's testimony would have been prejudicial to the client. We refuse to adopt the Court's reasoning because we find its application here problematic in two respects. First, the Court did not address the strictures of D.R. 5–102(A) which requires counsel's disqualification where it becomes apparent that a lawyer may be called as a witness on behalf of his own client. Second, the Court premised its holding on a failure to find sufficient prejudice to the

client under D.R. 5–102(B). Here, we find that Rogala's testimony is proffered by the plaintiff in order to demonstrate improprieties in the City's negotiating process. Similarly, in *Freeman* the Court was called upon to consider the test of what is "prejudicial" under D.R. 5–102(B) and concluded that the party seeking disqualification had failed to demonstrate the substantial likelihood of prejudice. We find the decision in *Freeman* inapposite where here we are called upon also to consider D.R. 5–102(A) and where the Court itself has recognized the extreme potential for prejudice from Rogala's testimony. *See, Teleprompter v. City of Erie*, 567 F.Supp. 1277, 1291 (W.D. Pa.1983).

■ The Court issues an Order requiring the withdrawal of the City defendants' counsel for reasons which are not a reflection on the abilities of counsel, and with reluctance given the nearness of a trial on the merits. However, it is the duty of the Court to supervise the professional conduct of the attorneys appearing before it. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980); *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385–86 (3d Cir.1972). The Court will order that the City defendants adhere to the schedule for the pretrial and the trial already set. All discovery has concluded, depositions have been transcribed and the Court's opinion of July 18, 1983 has significantly narrowed the triable issues. The Court considers the thirty or more days before trial sufficient to allow substitute counsel to adequately prepare. We note further that the lion's share of the defense of this case has consistently been assumed by counsel for the co-defendant Erie Telecommunications, Inc.

Accordingly, local counsel for the defendant Erie Telecommunications, Inc., Jack Quinn, Jr., and counsel for the City defendants, Jack Wingerter, are hereby ORDERED to withdraw and facilitate the re-

---

**3.** Rule 5–101(B) provides, in relevant part:

(B) A lawyer ... may testify

\* \* \* \* \* \*

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

tention of substitute counsel on or before November 1, 1983.