**CANNON AIRWAYS, INC., Plaintiff,**

v.

**FRANKLIN HOLDINGS CORPORATION and Lincoln Airlines, Inc., Defendants.**

**Civ. A. No. 85–714 MMS.**

United States District Court,
D. Delaware.

July 16, 1987.

Richard H. Morse, of Young, Conaway, Stargatt & Taylor, Wilmington, Del. (Fred R. Harwell, Jr., of Davis & Harwell, P.A., Winston-Salem, N.C., of counsel), for plaintiff.

Thomas Reed Hunt, Jr., and Thomas C. Grimm, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del.; for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Before the Court is the motion of defendants Franklin Holdings Corporation ("Franklin") and Lincoln Airlines ("Lincoln") for disqualification of Fred R. Harwell, Jr., attorney for plaintiff Cannon Airways ("Cannon"). Defendants assert that Mr. Harwell is "likely to be a necessary witness" at trial and must therefore be disqualified under Rule 3.7(a) of the Delaware Lawyers' Rules of Professional Conduct, adopted by this Court pursuant to Local Rule 8.2 D.(2). For the reasons that follow, defendants' motion will be denied.

## I. FACTS

This lawsuit arises out of an aircraft lease agreement under which plaintiff Cannon leased a Convair 440 aircraft to defendant Franklin, and Franklin subleased the aircraft to defendant Lincoln, its subsidiary. Plaintiff commenced suit on December 12, 1985. The amended complaint alleges various breaches of the lease agreement and the conversion of certain aircraft components subject to the lease, and claims damages and attorneys' fees. Defendants' answer to the amended complaint denies any breach of the lease agreement or conversion of the subject aircraft, disputes the claimed damages and attorneys' fees, and sets out various affirmative defenses, including waiver, failure of consideration, and commercial frustration. On December 29, 1986, defendants moved the Court to disqualify plaintiff's attorney, Mr. Harwell.

Harwell's involvement in the dispute underlying this litigation may be summarized as follows. In late 1981 or early 1982, Harwell and Ladd Lewis, then plaintiff

Cannon's director of operations, met with Michael Kleitz, then defendant Lincoln's president, to discuss the possibility of leasing an aircraft to Lincoln or to defendant Franklin. Over the next several months, Lewis and Kleitz spoke several times regarding the availability of an aircraft. In July of 1982, the parties met for further negotiations. Harwell and Lewis attended for plaintiff; Kleitz and N. Brian Child, defendant Franklin's president, represented defendants. Harwell and Child discussed certain unspecified details by telephone after the meeting. Ultimately, the lease agreement, which Harwell had drafted, was signed by Harwell for plaintiff and by Child for defendant Franklin.

Two provisions of the lease agreement are highlighted for purposes of the motion before the Court. Paragraph XVIII, under the heading "Costs and Late Fees," provides in part:

> In the event it shall be necessary for LESSOR to collect by any means . . . any payments from LESSEE owing under the terms of this agreement, . . . [and] [i]f such collection shall involve the services of an attorney, LESSEE shall pay the LESSOR'S reasonable attorney fees, together with all other court and collection costs.

Docket Item ("Dkt.") 41, Ex. A, ¶ XVIII. Paragraph XXI, under the heading "Termination," provides in part:

> LESSEE shall, at its option, have the right to terminate this Lease and all provisions hereunder by giving ninety (90) days notice of intent to the other party. . . . Notice of intent to terminate under this Paragraph XXI shall be given in writing, delivered by certified mail, which specifically refers to this Paragraph XXI.

*Id.* ¶ XXI.

On January 17, 1983, Child telephoned Harwell and informed him that Franklin was terminating the lease because of alleged mechanical difficulties with the aircraft. During this conversation, Child suggested that the parties' accountants determine the balance due each party under the various terms of the lease; Harwell voiced no objection. Child sent a letter to Harwell, dated January 17, 1983, serving notice of the termination. The letter expressly referenced Paragraph XXI of the lease agreement.

Subsequent to the termination notice, defendant Lincoln received a letter from a Nella C. Tate, who represented herself as plaintiff Cannon's president, stating that Lewis and Harwell were no longer authorized to conduct business on behalf of Cannon. Child responded to the letter, explaining that defendants had terminated the lease agreement and proposing an alternative arrangement for leasing the aircraft. Harwell became aware of this correspondence between Child and Tate. On February 21, 1983, he sent a letter to Child stating that Tate was not authorized to conduct business on behalf of Cannon and demanding payment of the aircraft rent for the month of February. Shortly thereafter, however, Child received a letter from an attorney representing Tate, explaining that Tate's authority was the subject of litigation and advising Child to take no action with respect to the leased aircraft until the legal dispute was resolved. The confusion continued until April 21, 1983, when Tate's attorney wrote to Lincoln stating that Tate was no longer associated with Cannon and that Harwell had the authority to represent the company.[1]

On April 26, 1983, Lewis sent Lincoln a letter rejecting the alternative leasing arrangement, demanding payment of rent for the months of February, March, and April, and asserting that the aircraft was to have been returned by April 17, 1983. Three days later, Harwell filed suit in North Carolina on Cannon's behalf against Franklin and Lincoln. The court dismissed the action in January of 1984 for lack of personal jurisdiction. Eight months later, Harwell filed suit in New York; the action was voluntarily dismissed in December of 1985 before the court could rule on the jurisdic-

---

1. Defendants did not return the aircraft until July of 1983. In addition, defendants retained possession of two engine cores allegedly the property of plaintiff.

tional issue.[2] Cannon then brought the present action, claiming, *inter alia,* payments allegedly due under the lease agreement and attorneys' fees pursuant to Paragraph XVIII of the agreement.

## II. DISCUSSION

### A. Disqualification Under Rule 3.7(a)

Rule 3.7(a) of the Delaware Lawyers' Rules of Professional Conduct provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

The lawyer as witness rule protects the integrity of the advocate's role as an independent and objective proponent of rational argument and preserves the distinction between advocacy and testimony. The official comment to Rule 3.7 states:

> The opposing party has proper objection where the combination of roles may prejudice that party's right in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Even if the opposing party shows that a lawyer is likely to be a necessary witness, disqualification is not required where any one of the three exceptions applies. The most notable of these is the substantial hardship exception, which explicitly requires the court to assess the harshness of disqualification in each case.

Rule 3.7(a) supersedes Disciplinary Rules 5–101(B) and 5–102(A) of the former Delaware Lawyers' Code of Professional Responsibility. DR 5–101(B) provided:

> A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
>
> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
>
> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

DR 5–102(A) provided:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

The Delaware Lawyers' Rules of Professional Conduct became effective on October 1, 1985.

As an initial matter, the Court holds that the "likely to be a necessary witness" language of Rule 3.7(a) is more restrictive than the "ought to be called as a witness" language of DR 5–101(B) and DR 5–102(A), placing a greater burden on the party seeking disqualification. Under the former Code, a lawyer "ought to be called as a witness" if he "has crucial information in his possession which must be divulged."

---

**2.** The North Carolina and New York suits, but not the present action, also named Soundair Corporation, the guarantor under Paragraph XXII of the lease agreement, as a defendant.

*Kalmanovitz v. G. Heileman Brewing Co.*, 610 F.Supp. 1319, 1323 (D.Del.1985) (quoting *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 538–39 n. 21 (3d Cir.1976), *cert. denied sub nom. Super Athletics Corp. v. Universal Athletic Sales Co.*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977)). In *Kalmanovitz*, this Court held:

> [T]he issue to be determined by this Court is not whether [an attorney] *will* testify but whether [he] *ought to testify* .... That the lawyer and his client decide that the lawyer need not testify is not controlling. Instead, the court must independently assess the situation.

*Id.* at 1325 (emphasis in original); *see Mac-Arthur v. Bank of New York*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981); *Supreme Beef Processors v. American Consumer Indus.*, 441 F.Supp. 1064, 1069 (N.D.Tex.1977). An important criticism of the Code formulation is that it was susceptible to use as a tactical measure to disrupt an opposing party's preparation for trial. As Judge Latchum recognized, "motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice." *Kalmanovitz*, 610 F.Supp. at 1323.

Rule 3.7(a) dispels some of the ambiguity of the former Code provisions by disqualifying a lawyer when he is "likely to be a necessary witness." This standard requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can determine whether another witness can testify, and precludes disqualification if the lawyer's testimony would merely be cumulative. *See ABA/BNA Lawyers' Manual on Professional Conduct* 61:507 (1984); Hazard & Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 407 (1986 Supp.); *see also Security Gen. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 335 n. 1, 718 P.2d 985, 988 n. 1 (1986) (Rule 3.7(a) "requires an even more specific showing of necessity" than the former Code provisions).

Rule 3.7(a) is therefore less prone to exploitation by opposing parties and more compatible with each party's interest in retaining its counsel of choice.

## B. Necessity of Harwell's Testimony

Defendants contend Mr. Harwell is "likely to be a necessary witness" with respect to four assertedly relevant and disputed issues. Because I do not agree that defendants have met their burden of showing Harwell's testimony on these issues will be necessary, he will be permitted to serve as plaintiff's trial counsel.

### 1. The January 17, 1983 Telephone Conversation

Defendants argue that Harwell must testify as to the January 17, 1983 telephone conversation in which Mr. Child informed Harwell that defendant Franklin was terminating the lease agreement. Plaintiff responds that the conversation is irrelevant and without effect because Paragraph XXI of the lease agreement expressly requires ninety days advance written notice of termination. Moreover, plaintiff contends, Harwell's testimony is unnecessary because the parties do not dispute what was said during the conversation.

Defendants, however, advance as possible defenses two legal theories to which the January 17 conversation would apparently be relevant. First, defendants argue that in terminating the lease, Child did not rely on Paragraph XXI of the agreement; instead, he relied on a more general right to terminate in light of the allegedly serious mechanical difficulties with the aircraft. Second, defendants assert, Child stated during the January 17 conversation that no further payments were due under the lease, a statement to which Harwell did not then object.[3]

■ The Court does not reach the merits of defendants' arguments, but does find on the current record that the content of the January 17 conversation can be established

---

**3.** Although defendants have not made clear the legal basis for the two theories, the Court assumes that the first is related to the defenses of commercial frustration and failure of consideration, and the second is related to the defense of waiver.

without Harwell's testimony. The record at this stage is replete with references to the conversation. Nothing, however, including Child's deposition testimony, implies that Child relied on something other than Paragraph XXI of the agreement when he terminated the lease or indicates he actually stated to Harwell that no further payments were due. *See* Child Deposition, Dkt. 42, at 61–62, 108–09. Indeed, Child's subsequent letter serving notice of the termination raises a contrary inference by expressly mentioning Paragraph XXI. *See* Dkt. 56, at A–18. Defendants have assembled no record facts, from deposition testimony or otherwise, amounting to a reasonable forecast of trial testimony that would conflict with the evidence already in place.[4] Under these circumstances, I conclude that Harwell is not likely to be a necessary witness, either to establish plaintiff's case or to rebut defendant's case, with respect to the January 17 conversation.

### 2. The Nella Tate Affair

Defendants argue that Harwell must testify as to Ms. Tate's assertion of authority to conduct business on behalf of plaintiff Cannon. According to defendants, the incident is relevant because the resulting confusion helps explain the delay in returning the leased aircraft.[5] Harwell's involvement consisted of sending a letter to Child on February 21, 1983 stating that Tate was not authorized to act on Cannon's behalf.[6]

■ The Court assumes for present purposes that the Tate affair will be relevant

to defendants' case. Defendants, however, have not pointed to any factual conflict regarding the timing of the incident or the contents of the communications among the various parties. The only potential dispute centers on the relation of the incident to defendant Franklin's failure promptly to return the aircraft. There has been no attempt to show that Harwell possesses information about this asserted connection. I therefore do not believe that Harwell is likely to be a necessary witness with respect to the matter of Ms. Tate.

### 3. The Meaning of the Attorneys' Fees Provision

Defendants argue Harwell must testify as to the meaning of Paragraph XVIII of the lease agreement, which requires defendant Franklin to pay plaintiff Cannon's reasonable attorneys' fees should it be necessary for Cannon to "collect ... any payments ... owing" under the lease. Dkt. 41, Ex. A, ¶ XVIII. According to defendants, the attorneys' fees provision was intended only to cover the costs of collecting amounts undisputably owing to the lessor.[7] This interpretation squarely conflicts with plaintiff's view that the provision was meant to require the reimbursement of all reasonable attorneys' fees arising out of a failure to make payments, including the costs of litigation necessary to establish the lessor's right to such payments.[8]

The Court does not decide at this juncture whether the parol evidence rule would in any event bar all testimony about prior

4. At oral argument, plaintiff stated that if Child testifies at trial contrary to the record evidence, plaintiff will rely on cross-examination and will not resort to having Harwell testify in rebuttal.

5. Specifically, defendants claim that the delay was in response to the letter from Tate's attorney advising Child to take no action with respect to the aircraft until the legal dispute over Tate's authority was resolved. *See* Switalski Letter of March 4, 1983, Dkt. 55A, at A–24.

6. Harwell also initiated legal action against Tate on behalf of Cannon in response to her apparent effort to take control of the company. *See* Harwell Deposition, Dkt. 59, app. C, at C–11. This has no bearing, however, on the dispute between Cannon and defendants in this case.

7. In support of their narrow construction of the attorneys' fees provision, defendants offer deposition testimony assertedly suggesting that the provision was a response to concerns about possible insolvency on the part of the lessee. *See, e.g.,* Harwell and Kleitz Depositions, Dkt. 59, app. C.

8. Plaintiff asserts that defendants admitted the applicability of the attorneys' fees provision in their answer to the amended complaint, which states that Paragraph XVIII of the lease agreement "speaks for itself." Dkt. 43, ¶ 21. Defendants' answer, however, clearly denied any liability for attorneys' fees in this case. *See id.* ¶ 23.

or contemporaneous understandings of the attorneys' fees provision. Nevertheless, it is apparent Harwell possesses information relevant to the parties' intent. Along with Mr. Lewis, he participated on plaintiff's behalf in negotiations leading up to the lease agreement. He and Child later discussed various details in concluding the agreement. He drafted the agreement and signed it for plaintiff.

■ Defendants contend that under these circumstances, *Kalmanovitz v. G. Heileman Brewing Co.*, 610 F.Supp. 1319 (D.Del.1985), compels the disqualification of Harwell. *Kalmanovitz*, however, is distinguishable both on its facts and as a matter of law. First, Judge Latchum noted that the lawyer in *Kalmanovitz* was the only witness available to testify as to certain matters: "[i]n light of the possibility that [plaintiff] is too ill to testify in person, it becomes clear that [plaintiff's lawyer] ought to testify even if his testimony only corroborates the deposition testimony of [plaintiff]." *Id.* at 1325. In the instant case, Lewis was a party in addition to Harwell at all negotiations during which the disputed provision may have been discussed,[9] and appears able and willing to testify for plaintiff at trial. Second, *Kalmanovitz* was decided under DR 5–101(B) and DR 5–102(A) of the former Code of Professional Responsibility, which this Court found to require disqualification whenever the lawyer's testimony would corroborate his client's account of the events in question. *Id.* (citing *MacArthur v. Bank of New York*, 524 F.Supp. 1205 (S.D.N.Y.1981); *Supreme Beef Processors v. American Consumer Indus.*, 441 F.Supp. 1064 (N.D.Tex.1977)). Rule 3.7(a) of the Rules of Professional Conduct, however, plainly requires the party moving for disqualification to demonstrate, by reference to the record, that the corroborative testimony will be *necessary* and not merely cumulative.

■ Defendants in this case have not shown that Harwell's testimony will be necessary to supplement or to corroborate Lewis' testimony on the meaning of the attorneys' fees provision. I therefore find that Harwell is not likely to be a necessary witness with respect to this issue.

### 4. The Reasonableness of the Attorneys' Fees Incurred

Paragraph XVIII of the lease agreement provides for recovery of the lessor's "reasonable" attorneys' fees. Dkt. 41, Ex. A, ¶ XVIII. Defendants, assuming for this purpose that attorneys' fees are available to plaintiff, argue that Harwell's testimony is necessary for the factfinder to determine the reasonableness of the fees incurred. Specifically, defendants assert that Harwell must testify as to the reasons for filing suits, later dismissed, in North Carolina and in New York.

■ The Court finds that the reasonableness of the attorneys' fees incurred by plaintiff can be established without resort to Harwell's testimony.[10] First, plaintiff has other witnesses available to testify on this issue. Lewis, a principal in the lease negotiations and in the subsequent dispute between the parties, appears to be as familiar as Harwell with plaintiff's reasons for attempting to sue defendants in North Carolina and New York. Plaintiff has also identified an expert witness, Aubrey B. Lank of the Wilmington law firm of Theisen, Lank, Mulford and Goldberg, who will testify as to the reasonableness of the fees incurred. Mr. Lank is prepared to state his opinion, based on facts in the record, that

---

9. Deposition testimony indicates that the attorneys' fees provision may have been discussed at the July 1982 meeting, at which both Lewis and Harwell were present. *See* Harwell and Kleitz Depositions, Dkt. 59, app. C. Although Lewis was not a party to the telephone conversation between Harwell and Child following the meetings, *see* Child Deposition, Dkt. 42, at 35, there is no suggestion that the attorneys' fees provision or any other disputed item was discussed at that time.

10. Rule 3.7(a)(2) provides that a lawyer may act as an advocate at trial and also testify as a witness if "the testimony relates to the nature and value of legal services rendered in the case." The Court does not here address whether this exception would permit Harwell to testify on the reasons for the various legal services rendered in the instant litigation.

plaintiff had reasonable grounds to assume there were sufficient minimum contacts which might have subjected defendants to personal jurisdiction in either North Carolina or New York. *See* Lank Letter of February 6, 1987, Dkt. 56A, at B–6.

Second, and more importantly, the entire reasonableness issue appears to be controlled by a North Carolina statute that places a ceiling on obligations contained in various instruments to pay attorneys' fees.[11] *See* N.C.Gen.Stat. § 6–21.2. Under the statute, obligations to pay attorneys' fees "upon any note, conditional sale contract or other evidence of indebtedness" are valid and enforceable, but

> [i]f such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

*Id.* § 6–21.2(2). A contract for the lease of personal property constitutes an "evidence of indebtedness" within the meaning of section 6–21.2. *Stillwell Enters. v. Interstate Equip. Co.*, 300 N.C. 286, 266 S.E.2d 812 (1980). Plaintiff readily concedes the statute limits the attorneys' fees it may recover to fifteen percent of the outstanding lease payments. Because the parties do not dispute that plaintiff has incurred reasonable fees in excess of this amount,[12] I conclude that Harwell is not likely to be a necessary witness with respect to the reasonableness issue.

### III. CONCLUSION

For the foregoing reasons, I find that Mr. Harwell is not likely to be a necessary witness at trial, and therefore may act as advocate. An order will issue denying defendants' motion for disqualification.

---

11. Under Paragraph XVI of the lease agreement, the laws of North Carolina and of the United States govern. Dkt. 41, Ex. A, ¶ XVI.

12. *See* Transcript of Oral Argument, Dkt. 63, at 42–49.