SUPREME BEEF PROCESSORS,
INC., et al.

v.

AMERICAN CONSUMER INDUSTRIES,
INC.

No. CA3–75–390–F.

United States District Court,
N. D. Texas,
Dallas Division.

July 28, 1977.

ORDER

ROBERT W. PORTER, District Judge.

The Court has been presented with a meaty problem concerning the Code of Professional Responsibility which governs the conduct of Texas attorneys. Art. XII § 8, Vern.Ann.Tex.Stats. (1973). Having chewed over this tough issue for several days my findings of fact and conclusions of law are outlined below.

This suit resulted from negotiations between Plaintiff Supreme Beef Processors (hereinafter SBP) and Defendant American Consumer Industries, Inc., (hereinafter ACI), principally for the sale and convey-

ance of a tract of land. Pursuant to these negotiations a written agreement was signed on March 8, 1974. This agreement provided that certain conditions precedent were to be performed to each side's satisfaction before the deal closed. Closing was to occur not later than March 8, 1975.

As time went by it became apparent that the proposed deal was souring. SBP, however, was anxious to close and arranged a meeting on March 4, 1975 to iron out any difficulties and, specifically, to present ACI with documents evidencing compliance with the conditions precedent.

SBP was represented at this meeting by its attorney, hereinafter referred to as Plaintiffs' corporate counsel, who had also handled prior negotiations. The documents concerning the conditions precedent were in his briefcase when he arrived at the March 4, 1975 meeting.

They were still in his briefcase when he left. According to Plaintiffs the ACI representative refused to even look at the documents but stalked out of the room saying "We'll see you in court." It is the Defendant's position that Plaintiffs' corporate counsel never tendered the documents.

SBP then attempted to arrange a closing for March 5, 1975 but ACI did not attend and on that day served notice in writing that it was terminating the contract. SBP, undaunted, attempted to arrange another closing on March 8, 1975 and forwarded all of the documents it contends were necessary to fulfill the conditions precedent. On March 8, 1977 SBP appeared with another attorney from the same firm, but again ACI did not attend.

This law suit was filed shortly thereafter.

ACI has defended the suit on several grounds. It contends, among other theories, that the Agreement of March 8, 1974 is voidable, or void, because of the fraud of Supreme Beef Processors in inducing the execution and delivery of the agreement. Much emphasis has also been placed on the theory that, in the absence of satisfactory proof prior to closing that Supreme Beef had fulfilled all of the conditions precedent,

ACI was justified in terminating pursuant to the Agreement's terms.

The testimony of Plaintiffs' corporate counsel is obviously pertinent to both these issues raised by the Defendant. Of particular importance is his testimony concerning the exact documents in his briefcase when he arrived and left the March 4, 1975 meeting. He is the only person who possesses this information. In addition, Plaintiffs' corporate counsel also has potential testimony as to whether he was permitted to show these documents to a representative of ACI. Of course, he is not the only person with this testimony as both of the representatives of SBP and the representative of ACI were at the meeting.

This suit was filed on April 1, 1975 and the Plaintiff's original complaint was signed by two attorneys belonging to the same firm as Plaintiffs' corporate counsel. One of the two attorneys signing the complaint also assisted corporate counsel in the contract negotiations.

The case proceeded with pre-trial discovery and on November 1, 1976 the Defendant moved for summary judgment. The Plaintiff responded on November 29, 1976. Attached to this response was the affidavit of Plaintiffs' corporate counsel. His only testimony by this affidavit was that a closing was to be held between Plaintiff and Defendant on March 5, 1975 but that no one from ACI showed up.

During this period SBP's trial attorney anticipated that corporate counsel would have to be a witness at trial. However, Plaintiffs' trial lawyer testified that he believed the sole testimony to be elicited from corporate counsel would be what documents were in his briefcase at the March 4, 1975 meeting.

Plaintiffs' trial lawyer felt that this testimony would be undisputed and in late December of 1976 or early January of 1977, approached the Defendant's attorney to obtain a stipulation on this point. The Defendant refused to so stipulate.

■ At this point it became apparent that corporate counsel would definitely

have to testify at trial. Plaintiffs' trial lawyer still believed, however, that the testimony would be uncontested. It is true that there would be no direct evidence controverting corporate counsel's testimony. However, the Defendant's refusal to stipulate should have put Plaintiffs' trial lawyer on notice that Defendant was prepared to argue corporate counsel's credibility to the jury. The testimony of the corporate counsel was thereby withdrawn from the realm of mere formality and uncontested facts.

This case was set for a May 9, 1977 jury trial. The Court overruled the Defendant's motion for summary judgment on April 1, 1977.

The Court's first knowledge of the intentions of Plaintiffs' trial lawyer to call two members of his firm came when the pretrial order was filed on May 6, 1977. Due to my attendance at the Fifth Circuit Judicial Conference, I did not see this pretrial order until the night of May 8, 1977. It was then that I noticed that corporate counsel and one of the lawyers signing the complaint were both listed as witnesses for the Plaintiffs.

■ This created an obvious conflict under the Rules of the State Bar of Texas. The specific rules applicable to this situation are DR 5–101[1] and DR 5–102.[2] Accordingly, just before a jury was picked in this case I raised on my own motion the possible disqualification of Plaintiffs' trial lawyer and/or the inadmissibility of his partners' testimony.

The Defendant's initial position was that it would not move for the disqualification of Plaintiffs' trial lawyer, but hoped to discredit the testimony of the lawyers before the jury. The Defendant was prepared to argue, and with a great deal of force in the Court's view, that the testimony of these two attorneys are entitled to little weight due to their firm's interest[3] in the suit. The Defendant, after the jury was selected, switched tactics and moved for disqualification of Plaintiffs' trial lawyer and his firm.

---

1. DR 5–101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
 (A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
 (B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
 (1) If the testimony will relate solely to an uncontested matter.
 (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
 (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
 (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
2. Withdrawal as Counsel When the Lawyer Becomes a Witness.

 (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR5–101(B) (1) through (4).
 (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.
3. Plaintiffs' trial lawyer testified that his firm did not have a contingency fee arrangement and thus his firm's financial interest was not contingent on the result of the case. However, his firm certainly had an interest in seeing their clients recover for reasons of reputation and prestige and continued good relations with these clients. In addition, even when the fee has been earned on an hourly basis, the amount of money finally paid by the client is often in practice varied depending upon the result of the litigation. These matters could have legitimately been argued to the jury.

The Plaintiffs opposed this motion and Steve Spiritas—designated representative for the Plaintiffs—testified that he was willing to waive the protection of DR 5–101 and DR 5–102. Mr. Spiritas testified that disqualification at this late date would impose a substantial hardship on the Plaintiffs. A great deal of time and money was invested by the Plaintiffs in working with their trial lawyer preparing for the lawsuit. He testified that money obviously would be lost were the firm disqualified and Plaintiffs forced to hire new counsel.

In addition, the jury would have to be excused and the case continued if the motion to disqualify were granted.

■ The first legal issue concerns whether a client may waive the protection of DR 5–101 and DR 5–102. Although these disciplinary rules are for the protection of clients they are also for the protection of the bar and the integrity of the court.[4] I therefore hold that these disciplinary rules may not be waived by the client. *Draganescu v. First National Bank of Hollywood*, 502 F.2d 550, 552 (5th Cir. 1974).

■ I turn next to whether the circumstances of this case fit into one of the four exceptions to DR 5–101. Plaintiffs argue that the testimony of the two lawyers relate to uncontested matters. The testimony of Plaintiffs' corporate counsel by affidavit in opposition to the summary judgment falls into this category. It is uncontested that no one from ACI appeared for the March 5, 1975 meeting. Even when, however, the lawyer is to testify as to uncontested matters that testimony should be subject to close judicial scrutiny. *Beavers v. Conner*, 258 So.2d 330, 332 (Fla.App. 1972).

Of course, the testimony of Plaintiffs' corporate counsel here went far beyond the uncontested matters contemplated by DR 5–101(B)(1). First, his testimony on what was in his briefcase on March 4, 1975 was subject to an attack for credibility. Plaintiffs' trial lawyer was on notice that such an attack would be made.

■ Second, his material testimony on what transpired at the March 4, 1975 meeting was not even going to be elicited. Plaintiffs' trial lawyer conceded that this testimony would present a violation of the Canons. It was his theory from the beginning, however, that the testimony of corporate counsel would not be needed on this point and he would therefore not be forced to interrogate corporate counsel on this matter at trial. However, whether trial counsel thinks some months before trial that particular testimony will be necessary is immaterial under DR 5–101 and DR 5–102. The client is entitled to every scrap of favorable evidence that is available not only the favorable evidence that is *essential* to his case.

This case provides a perfect example. Mr. Spiritas testified at trial that the ACI representative refused to even look at the documents corporate counsel brought to the March 4, 1975 meeting. Plaintiffs argue that under these facts this was an anticipatory breach of contract. However, the Defendant contends that the documents were never tendered. Plaintiffs' corporate counsel, but for his interest in this case, could testify that not only were the documents in his briefcase but that he told the ACI representative the documents were there awaiting his inspection. He could have further testified that the ACI representative refused to look at the documents and stalked out of the room. This would corroborate the Plaintiffs' story. However, the testimony of Plaintiffs' corporate counsel under the present circumstances, would probably have carried little weight with the jury because of his interest in the litigation.

Conversely, had he testified as a disinterested attorney, his testimony most probably would have been given greater weight.

■ I turn next to the provisions of DR 5–101(B)(4) which provide that an attorney may testify as to any matter if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case. This exception generally contem-

---

**4.** 6 *Wigmore on Evidence* § 1911 at 775–80 (Chadbourn ed. 1976).

plates only an attorney who has some expertise in a specialized area of the law such as patents and the burden is on the firm seeking to continue representation to prove distinctiveness. See *Universal Athletic Sales Co. v. American Gym,* 546 F.2d 530 (3rd Cir. 1976). In addition, the distinctive value must be apparent before the decision to accept or refuse employment is made. Accordingly, the rule is to be very narrowly construed.

 Applying the DR 5–101(B)(4) exception, I overruled the Defendant's motion to disqualify. Upon further reflection and research I believe that judgment to have been in error and it is hereby vacated.[5] Further action on Defendant's motion is unnecessary as the parties have settled and the controversy is thus moot.

 So that this problem will not arise again, all attorneys with cases on my docket shall be required to notify the Court as soon as it appears that they or members of their firms have any testimony that *could conceivably* be used at trial. The Court should be notified regardless of whether the individual attorney believes one of the four exceptions specified in DR 5–101(B) applies. This duty of notification shall apply to all attorneys in cases before this Court regardless of whether they or their firm are personally involved in the potential conflict under the disciplinary rules. Thus, if Plaintiff's counsel learns that defense counsel should testify, the Court should be notified by Plaintiff's counsel as well as Defendant's counsel.

It is so ORDERED.

---

**5.** *See* State Bar of Texas Committee on Interpretation of the Canons of Ethics, Opinion 234 (May 1961). *Cf.* Opinion 208 (December 1960); Opinion 209 (December 1960); Opinion 363 (March 1973); Opinion 368 (March 1974).

An interesting situation would have arisen if the Plaintiffs had a contingent fee arrangement with their lawyer. The Supreme Court of Texas held in 1869 that a lawyer with such a fee arrangement was incompetent to testify on behalf of his client. *Dailey v. Monday,* 32 Tex. 141 (1869); *See also Spencer v. Kinnard,* 12 Tex. 180, 188 (1854). The *Dailey* case has never been expressly overruled and would form the rule of decision, if still good law, in a diversity case such as this. Fed.Rules of Evid., Rule 601. However, the continued validity of this case has been questioned. *See,* Sutton, The Testifying Advocate, 41 Tex.L.Rev. 477, 479 (1963).