(876 P.2d 184)
No. 69,677

LEASEAMERICA CORPORATION, *Appellant,* v. ROBERT L. STEWART, *Appellee.*

Opinion filed June 17, 1994.

*William F. Kluge III* and *Lucy L. Herlocker,* of Lambdin & Kluge, Chartered, of Wichita, for appellant.

*Martin R. Ufford,* of Redmond, Redmond & Nazar, of Wichita, and *Robert B. Barefield,* of Minneapolis, for appellee.

Before LARSON, P.J., ELLIOTT and RULON, JJ.

LARSON, J.: This is an interlocutory appeal by LeaseAmerica Corporation (LeaseAmerica) from the trial court's order disqualifying its counsel from trying its case against Robert Stewart to recover the deficiency balance and accrued interest after the sale of motor homes it repossessed from Eldorado Motor Acceptance Corporation (Eldorado). The trial court's order was predicated upon the possibility that LeaseAmerica's counsel would be called by Stewart as a trial witness.

Eldorado leased 18 motor homes from LeaseAmerica. Stewart personally guaranteed payment of the sums due under the leases. Eldorado filed bankruptcy and defaulted on the lease payments. LeaseAmerica repossessed the 18 motor homes in July and sold them in September of 1989. LeaseAmerica sued Stewart to recover the claimed deficiency of $780,000 plus interest.

Stewart defended the action by alleging, in part, that LeaseAmerica had failed to dispose of the motor homes in a commercially reasonable manner.

Discovery in the action was completed and a pretrial order was filed. In the pretrial order, Stewart identified LeaseAmerica's counsel, William F. Kluge III, as a trial witness. LeaseAmerica filed a motion in limine requesting that the trial court forbid Stewart from calling Kluge as a trial witness. Stewart responded by moving to disqualify Kluge as LeaseAmerica's counsel.

In his motion to disqualify, Stewart contended Kluge was a necessary fact witness and that allowing him to continue as LeaseAmerica's attorney would violate Model Rule of Professional Conduct (MRPC) 3.7 (1993 Kan. Ct. R. Annot. 324) and Disciplinary Rule (DR) 5-102 (1993 Kan. Ct. R. Annot. 223).

Stewart argued he was entitled to examine Kluge about the contents of letters Kluge wrote on behalf of LeaseAmerica to Stewart's former attorney, Terry Cupps.

Stewart asserted that Kluge's testimony might be prejudicial to LeaseAmerica. Stewart noted that Kluge's deposition had been

taken and he should have been aware that he would probably be a witness in this case.

At the hearing, LeaseAmerica withdrew its motion in limine. In opposition to Stewart's motion to disqualify, LeaseAmerica argued that Kluge's deposition revealed he had no firsthand knowledge of anything factual and the content of the Kluge letters to Cupps was as directed by LeaseAmerica. LeaseAmerica argued that it was advised by house counsel. Kluge's correspondence was an intermediate step to repossess the motor homes, attempting to avoid a lawsuit, and involved no contractual negotiations.

LeaseAmerica contended that because all of the letters Kluge wrote to Cupps had been stipulated into evidence at the pretrial conference, the only testimony Kluge could give would be cumulative, and repetitious. It claimed that under Stewart's position any attorney who corresponds to another prior to a lawsuit would be subject to being called as a witness.

LeaseAmerica further argued that a motion to disqualify must be supported by evidence and that a party's attorney could not be disqualified on the basis of statements of opposing counsel. LeaseAmerica asserted that Stewart had not deposed a single LeaseAmerica witness and had no idea what LeaseAmerica's witnesses' testimony would be.

Stewart responded by arguing that the letters written by Kluge were sufficient evidence for purposes of the hearing to show there was a substantial likelihood that Kluge's testimony would be necessary at trial and that he should be disqualified.

The trial court granted Stewart's motion to disqualify, stating that "there very well may be a necessity for counsel to call [Kluge] as a witness in the event that the testimony of the plaintiffs doesn't jive with the information set forth in [Kluge's] correspondence as to where that information came from."

The trial court found Kluge's situation indistinguishable from that of a lawyer who negotiates a contract on behalf of a client and is disqualified from acting as an advocate when a dispute with regard to the contract arises because, as a negotiator of the contract, the attorney would potentially be a material witness.

The trial court stated that if Kluge testified that the information in the letters was given to him by someone from LeaseAmerica who testified differently from the information contained in the

letters, then Kluge would be testifying directly in opposition to LeaseAmerica.

The trial court found that:

"Kluge knew or reasonably should have known virtually from the inception of this litigation, and at least from the time of taking his deposition, that he was and remains a potential material witness to this case and of material facts which are or may be essential to the defense of the defendant in this case, would thus be required to testify against his own client's interest and not therefore serve as an advocate for that client in a jury trial in accordance with the Supreme Court rule which embodies the disciplinary Rule 5.102 and the Court would sustain the motion to disqualify counsel as a potential witness."

The trial court determined its ruling was a final decision subject to interlocutory appeal pursuant to K.S.A. 1993 Supp. 60-2102(b). LeaseAmerica appeals.

LeaseAmerica contends the trial court erred by disqualifying its counsel without hearing any evidence and based only on the speculation of Stewart that he might attempt to obtain testimony from LeaseAmerica's trial counsel.

We first determine the appropriate standard of review of the trial court's order of disqualification. In *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980), the Third Circuit concluded that the issue of whether a disciplinary rule prohibited certain professional conduct is a question of law subject to plenary review on appeal, stating the court's power to disqualify an attorney "derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." Our court in *In re Estate of Koch*, 18 Kan. App. 2d 188, 215, 849 P.2d 977, *rev. denied* 253 Kan. 858 (1993), held the determination of whether an attorney suffers under a conflict of interest is a question of law, citing *Miller* and *Haynes v. First Nat'l State Bk. of N.J.*, 87 N.J. 163, 432, A.2d 890 (1981). The *Miller* court made it clear that a trial court's interpretation of a disciplinary rule is subject to de novo review, while the trial court's use of disqualification as a sanction is reviewable for abuse of discretion. 624 F.2d at 1201.

We hold the trial court's decision that MRPC 3.7 and DR 5-102 prohibited Kluge from acting as trial counsel, subjecting him to automatic disqualification if Stewart intended to call him as a

witness, is a question of law over which this court has unlimited review. See *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

While we will consider the wording of DR 5-102, we look to the later provisions of MRPC 3.7, which must be interpreted and applied as we set forth in *In re Estate of Koch*:

"The history of the Model Rules of Professional Conduct adopted by the Kansas Supreme Court effective March 1, 1988, Supreme Court Rule 226 (1992 Kan. Ct. R. Annot. 238) can be traced to the Canons of Professional Ethics as first adopted by the American Bar Association on August 27, 1908. See 164 Kan. xi (1948).

"According to the Prefatory Rule to Rule 226, the Model Rules of Professional Conduct are 'general standards of conduct and practice required of the legal profession in Kansas.' The interaction between the Canons and the Model Rules is stated in the following manner:

'To the extent that they are not inconsistent with the rules herein adopted or the statutory or case law of Kansas, the court also adopts in principle the preamble and comments accompanying the Model Rules, except as hereinafter modified. The Canons of Professional Responsibility numbered 1 through 9, adopted as part of Supreme Court Rule 225, continue as general statements of required professional conduct.' Rule 226.

"The provisions of Rule 226 supersede and supplement Rule 225 of the Code of Professional Responsibility. Rule 225, Canons 1 through 9, are preserved 'as general statements of required professional conduct.' Rule 226. See *Geisler By Geisler v. Wyeth Laboratories*, 716 F. Supp. 520, 524 (D. Kan. 1989)." 18 Kan. App. 2d at 212.

MRPC 3.7 is a part of Rule 226 and supersedes and supplements DR 5-102, which is found in Rule 225. The specific wording of the rules which we must construe is as follows:

MRPC 3.7
"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client."

"(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."

DR 5-102
"*Withdrawal as Counsel When the Lawyer Becomes a Witness.*

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B) (1) through (4).

"(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

The prohibition against a lawyer testifying for his or her client has its basis in the rules of evidence:

"The rule prohibiting a lawyer from acting both as an advocate and as a witness on behalf of a client . . . originated in the law of evidence as a corollary to the general principle that neither a party nor one aligned in interest with a party is competent as a witness on the party's behalf. *See* 6 Wigmore, *Evidence* § 597 (Chadbourn rev. ed. 1976).

"The notion that a lawyer is not a competent witness on behalf of the client has been largely rejected by modern courts, which analyze the prohibition as a matter of professional ethics rather than evidentiary law. In *Cottonwood Estates v. Paradise Builders*, 128 Ariz 99, 102, 624 P2d 296, 299 (1981), for example, the court noted that '[e]ven though the attorney is otherwise competent to testify, it is generally considered a serious breach of professional etiquette and detrimental to the orderly administration of justice for an attorney to take the stand in a case he is trying.' *See also Universal Athletic Sales Co. v. American Gym*, 546 F2d 530 (CA3 1976) ('it is well settled that a lawyer is competent to testify on behalf of his client'); *Robinhood Trails Neighbors v. Winston-Salem Zoning Board of Adjustment*, 44 NCApp 539, 261 SE2d 520 (1980); ABA Formal Opinion 50 (Dec. 14, 1931)." ABA/BNA Lawyers' Manual on Professional Conduct § 61:503 (1984).

The trial court in its ruling focused on DR 5-102, which is materially different than MRPC 3.7 as adopted by our Supreme Court in 1988. We first point to the difference the text writers and courts have found between the respective provisions.

In *Cannon Airways v. Franklin Holdings Corp.*, 669 F. Supp. 96, 99-100 (D. Del. 1987), Chief Judge Schwartz pointed out a basic change resulting from the adoption of MRPC 3.7 when he wrote:

"As an initial matter, the Court holds that the 'likely to be a necessary witness' language of Rule 3.7(a) is more restrictive than the 'ought to be called as a witness' language of DR 5-101(B) and DR 5-102(A), placing a

greater burden on the party seeking disqualification. Under the former Code, a lawyer 'ought to be called as a witness' if he 'has crucial information in his possession which must be divulged.' *Kalmanovitz v. G. Heileman Brewing Co.*, 610 F.Supp. 1319, 1323 (D.Del.1985) (quoting *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 538-39 n. 21 (3d Cir.1976), *cert. denied sub nom. Super Athletics Corp. v. Universal Athletic Sales Co.*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). In *Kalmanovitz*, this Court held:

'[T]he issue to be determined by this Court is not whether [an attorney] *will* testify but whether [he] *ought to testify* . . . . That the lawyer and his client decide that the lawyer need not testify is not controlling. Instead, the court must independently assess the situation.'

*Id.* at 1325 (emphasis in original); *see MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981); *Supreme Beef Processors v. American Consumer Indus.*, 441 F.Supp. 1064, 1069 (N.D.Tex.1977). An important criticism of the Code formulation is that it was susceptible to use as a tactical measure to disrupt an opposing party's preparation for trial. As Judge Latchum recognized, 'motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice.' *Kalmanovitz*, 610 F.Supp. at 1323.

"Rule 3.7(a) dispels some of the ambiguity of the former Code provisions by disqualifying a lawyer when he is 'likely to be a necessary witness.' This standard requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can determine whether another witness can testify, and precludes disqualification if the lawyer's testimony would merely be cumulative. *See ABA/BNA Lawyers' Manual on Professional Conduct* 61:507 (1984); Hazard & Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 407 (1986 Supp.); *see also Security Gen. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 335 n. 1, 718 P.2d 985, 988 n. 1 (1986) (Rule 3.7(a) 'requires an even more specific showing of necessity' than the former Code provisions). Rule 3.7(a) is therefore less prone to exploitation by opposing parties and more compatible with each party's interest in retaining its counsel of choice."

The American Bar Association's Annotated Model Rules of Professional Conduct pp. 389-91 (2d Ed. 1992) sets forth a more detailed comparison of the Rules and Code than is required for our purposes but makes the following material comments:

"*Paragraph (a): 'Likely to Be a Necessary Witness'*
"A Tighter Standard

"Rule 3.7 improves upon vague language in the predecessor Model Code that prohibited a lawyer from serving as an advocate in any case in which 'it is obvious' that the lawyer or his associate 'ought' to be called as a witness on the client's behalf. Under the rule a lawyer is prohibited, absent certain

exceptions, from serving as an advocate at trial only when the lawyer is likely to be a necessary witness.

" 'Ought to Be Called As A Witness'—Inconsistent Formulations in the Case Law

"Whether a lawyer 'ought to be called as a witness' within the meaning of DR 5-102 of the Model Code was a frequently contested issue. The ambiguity of the phrase led to inconsistent formulations in the case law. *Compare, e.g., Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 546 F.2d 530 (3d Cir. 1976) (lawyer 'ought to be called' if lawyer 'has crucial information which must be divulged'), *cert. denied,* 430 U.S. 984 (1977) *and Davis Stamler,* 494 F. Supp. 339 (D.N.J.) (lawyer must be a 'necessary' witness to come within the rule), *aff'd,* 650 F.2d 477 (3d Cir. 1981) *and J.D. Pflaumer, Inc. v. United States Dep't of Justice,* 465 F. Supp. 746 (E.D. Pa. 1979) (lawyer must be an 'indispensable' witness to come within the rule) *with, e.g., MacArthur v. Bank of New York,* 524 F. Supp. 1205 (S.D.N.Y. 1981) (if lawyer's testimony 'could be significantly useful' to client, lawyer should be disqualified) and *Comden v. Superior Court,* 20 Cal. 3d 906, 145 Cal. Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562 (court disqualified lawyer because it could not say 'with any degree of security or in good conscience that [the lawyer] would not be called as a witness'), *cert. denied,* 439 U.S. 981 (1978), *and Supreme Beef Processors, Inc. v. American Consumer Industries,* 441 F. Supp. 1064 (N.D. Tex. 1977) (lawyer would be disqualified if his testimony 'could conceivably be used at trial'). *See also Paretti v. Cavalier Label Co.,* 722 F. Supp. 985 (S.D.N.Y. 1989) (noting that DR 5-102 has been criticized for over-breadth, court looked to Model Rule 3.7 in refusing to disqualify lawyer whose testimony would be cumulative); *Cox v. State,* 475 N.E.2d 664 (Ind. 1985) (where criminal defense lawyer's testimony in client's behalf would be merely cumulative, lawyer's failure to withdraw was not ineffective assistance; cumulative testimony does not make it 'obvious' that lawyer should withdraw and testify).

. . . .

"A Specific Showing of Necessity Is Required

"The 'likely to be a necessary witness' language of Rule 3.7(a) 'requires an even more specific showing of necessity' than did the provisions of the predecessor Model Code. *Security Gen. Life Ins. Co. v. Superior Court,* 149 Ariz. 332, 718 P.2d 985 (1986) (Rule 3.7(a) requires a showing that the proposed testimony is relevant, material, and unobtainable elsewhere). *See, e.g., United States v. Defazio,* 899 F.2d 626, 30 F.R. Evid. Serv. 190 (7th Cir. 1990) (looking to the comment to Rule 3.7, court disqualified lawyer for bankruptcy fraud defendant, where lawyer had represented defendant in the bankruptcy filing and would likely be called to testify about the source of information filed in the bankruptcy schedules); *State ex rel. Neb. State Bar Ass'n v. Neumeister,* 234 Neb. 47, 449 N.W.2d 17 (1989) (discipline lawyer who failed to withdraw from representation of client in nursing home whose relatives had petitioned for conservatorship, where lawyer knew he

would be material witness for client as to her mental capacity). *Compare Kalmanovitz v. G. Heileman Brewing Co.,* 610 F. Supp. 1319 (D. Del. 1985) (DR 5-102(A) requires disqualification whenever lawyer's testimony would corroborate client's account of events in question) *with Cannon Airways, Inc. v. Franklin Holdings Corp.,* 669 F. Supp. 96 (D. Del. 1987) (Rule 3.7(a) requires that the corroborative testimony will be necessary and not merely cumulative). In the disqualification context, it also permits the court to delay ruling until it can determine whether another witness can testify. *See Cannon Airways, Inc. v. Franklin Holdings Corp.,* 669 F. Supp. 96 (D. Del. 1987) (further noting that Rule 3.7(a) is therefore 'less prone to exploitation by opposing parties and more compatible with each party's interest in retaining its counsel of choice')."

See generally Wolfram, Model Legal Ethics § 7.5.2, pp. 375-90 (1986), and 1 Hazard & Hodes, The Law of Lawyering: A Handbook on The Model Rules of Professional Conduct § 3.7:100-:301, pp. 678-85 (2d Ed. 1993).

Although DR 5-102(A) would have required an attorney to withdraw when it became obvious he or she or a lawyer in his or her firm would be called to testify concerning contested matters, *In re Adoption of Irons,* 235 Kan. 540, 560, 684 P.2d 332 (1984) (Schroeder, C.J., dissenting), the specific provisions of MRPC 3.7(b) allow a lawyer to try a case in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by MRPC 1.7 (1993 Kan. Ct. R. Annot. 278) or MRPC 1.9 (1993 Kan. Ct. R. Annot. 285).

There are other differences between the Code and the Rules relating to a lawyer witness, but the ones we have pointed out show that different tests are to be applied and different results are to be reached when MRPC 3.7 is applied to the facts of the instant case.

The Comment to MRPC 3.7 provides:

"[P]aragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. . . .

"Whether the combination of roles involves an improper conflict of interest with respect to the client is determined by Rule 1.7 or 1.9. For example, if there is likely to be substantial conflict between the testimony of the

client and that of the lawyer or a member of the lawyer's firm, the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved." Comment, Supreme Court Rule 3.7 (1993 Kan. Ct. R. Annot 324).

Geoffrey C. Hazard supervised the drafting of the restatement of the law governing lawyers and served as reporter for the Kutak Commission, which wrote the Model Rules of Professional Conduct recommended by the American Bar Association. *In re Estate of Koch*, 18 Kan. App. 2d at 214. In 1 Hazard and Hodes, The Law of Lawyering: A Handbook on The Model Rules of Professional Conduct § 3.7:103, pp. 680-80.1, the authors state:

"The Comment to Rule 3.7 suggests other (slightly stronger) rationales for the lawyer-witness rule, again distinguishing between client interests and the interests of opposing parties. The interest of the opposing party protected by Rule 3.7 is parallel to that protected by Rule 3.4(e), which forbids an advocate from voicing personal opinions about the merits of a cause. Both rules prevent mixing of advocacy and testimony. As to protection of client interests, Rule 3.7 is essentially an application of the conflict of interest principle. If the lawyer (or a member of his firm) must give testimony that is either adverse or ambivalent with respect to the client's cause, the cause may be damaged. Moreover, even where the lawyer's testimony is helpful to the client, the lawyer may have a difficult time representing his client zealously while simultaneously trying to protect his own reputation as a truthful witness.

"Rule 3.7 responds to these concerns separately in its two subsections. Rule 3.7(a) generally protects an opposing party's interest in fairness in litigation by barring the first party's advocate from acting as a witness, except under specified conditions. Since an opposing party's interest is at stake, the consent of the lawyer's client will not cure the disability. Rule 3.7(b) protects client interests by cross referencing to Rules 1.7 and 1.9, the key rules on conflict of interest. As in most situations involving conflict of interest, counseled client consent will cure the problem."

Wolfram in his book Modern Legal Ethics § 7.5.2, pp. 383-84, has this to say about advocate testimony adverse to a client:

"Suppose that an advocate and the advocate's client agree that the advocate has no testimony to offer in the case but the advocate has been subpoenaed to testify by the party opposing the client. If the lawyer is not a necessary witness for his or her client, then Model Rule 3.7(a) provides, in effect, that the general conflict of interest rules [MRPC 1.7 (simultaneous conflicts); MRPC 1.9 (former-client conflicts)] determine whether the fact that the

lawyer is likely to be called as a witness by another party requires disqualification. . . .

"[T]he power to call opposing counsel as a witness could be employed in a manipulative way to foist upon that lawyer the role of advocate-witness and thereby drive the lawyer from the case. Courts retain the power to require a party who attempts to force the opposing party's trial lawyer to the witness stand to specify in advance the nature of the testimony sought, so that the court can pass on its relevance in order to further the policy of limiting testimony by advocates. Beyond a minimal showing of relevance, courts will generally require that the opposing party demonstrate that the advocate's testimony will be substantially useful to that party and that the evidence is not available from any other witness in a substantially similar form and with substantially similar weight.

. . . .

"Under the general conflict of interest rules, client consent under the Model Rules can remove the adverse-testimony barrier in all but those rare cases in which the lawyer's adverse testimony so sharply conflicts with the client's interests that the client's consent is objectively unreasonable."

"Motions to disqualify 'should be reviewed with extreme caution for they can be misused as a technique[ ] of harassment.' " *Chapman Engineers v. Natural Gas Sales Co.*, 766 F. Supp. 949, 954 (D. Kan. 1991). "Such motions are often simply ' "common tools of the litigation process, . . . used . . . for purely strategic purposes." ' " *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1539 (S.D.N.Y. 1985). "The right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances." *Chapman*, 766 F. Supp. at 954. "Where the party seeking disqualification is also the one wanting to call the attorney as a witness, the court 'must be especially sensitive to the potential for abuse.' " *Chapman*, 766 F. Supp. at 959. "[T]he purpose of the [Model Rules of Professional Conduct] can be subverted when they are involved by opposing parties as procedural weapons." Rule 226, Scope (1993 Kan. Ct. R. Annot. 256).

"The burden in a motion to disqualify is on the moving party." *Field v. Freedman*, 527 F. Supp. 935, 941 (D. Kan. 1981).

It is clear to us that Stewart has failed to sustain his burden of proof to substantiate the trial court's disqualification ruling. There was no showing that Kluge would be a "necessary" witness. Stewart had conducted no discovery of LeaseAmerica's employees

and could not point to any testimony which Kluge would give that was adverse to his client's interest.

The burden which the moving party faces in a disqualification motion is well stated in ABA/BNA Lawyers' Manual on Professional Conduct § 61:507, in the following manner:

"Model Rule 3.7(a) disqualifies a lawyer when there is a likelihood that the lawyer will be a 'necessary' witness. This standard requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can be determined that no other witness could testify, and obviates disqualification if the lawyer's testimony is merely cumulative. *Cf. Cottonwood Estates v. Paradise Builders*, 128 Ariz 99, 105, 624 P2d 296, 302 (1981), in which the court stated that '[w]hen an attorney is to be called as a witness other than on behalf of his client, a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client.' *See also J.P. Foley & Co. v. Vanderbilt*, 523 F2d 1357 (CA2 1975); *Freeman v. Kulicke & Soffa Industries*, 449 FSupp. 974 (EDPa 1978); *Connell v. Clairol*, 440 FSupp 17, 18 n.1 (NDGa 1977); *Miller Electrical Construction v. Devine Lighting Co.*, 421 FSupp 1020 (WDPa 1976); *Brown v. DeRugeris*, 92 CalApp3d 895, 155 CalRptr 301 (1979)."

In *Smithson v. U.S. Fidelity & Guar. Co.*, 186 W. Va. 195, 201, 411 S.E.2d 850 (1991), USF&G contended the trial court erred by failing to disqualify plaintiff's counsel when USF&G informed the court that it desired to call him as a witness. The Supreme Court of Appeals of West Virginia adopted the law applicable under those cases governed by DR 5-102 and extended it to situations falling under Rule 3.7 of the Rules of Professional Conduct and stated:

"We conclude that when an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated: second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client."

The West Virginia court ultimately determined the disqualification was without merit because USF&G failed to show that the

desired testimony could not have been developed by other witnesses.

Based on the authorities cited, we hold that when opposing counsel seeks to disqualify an attorney because opposing counsel intends to call the attorney at trial to testify on matters adverse to his or her client's interests, not only must the first three prongs of the *Smithson* test be satisfied, but the conflict of interest rules in MRPC 1.7 and MRPC 1.9 may be waived and the client may consent to the attorney's representation.

Client consent to an alleged conflict of interest will prevent the power of the client to control the progress of his or her case from being placed into the hands of opposing counsel. We recognize that in the real world attorneys correspond with each other in an attempt to resolve disputes before resorting to litigation. An attorney has a duty to zealously represent a client, and the representation should not be overshadowed by the concern that what an attorney wrote in a letter to opposing counsel during the dispute resolution process may later be used by the opponent as a tactical weapon under the guise of MRPC 3.7.

In this situation, we find the trial court erred in granting Stewart's motion to disqualify Kluge for two reasons. First, under the rule we have announced today, LeaseAmerica may consent under the conflict of interest rules to Kluge's representation even in the face of adverse testimony.

Second, we conclude from an examination of the record that Stewart has failed to show that Kluge will give testimony material to the determination of whether LeaseAmerica disposed of the motor homes in a commercially reasonable manner and that such evidence cannot be obtained elsewhere. Stewart's mere speculation that LeaseAmerica's witnesses *might* testify at trial in a manner inconsistent with the statements Kluge made in his letters is not a sufficient basis for a disqualification order.

The underlying issue in the lawsuit concerns the commercial reasonableness of LeaseAmerica's disposition of the mobile homes, not whether the letters written by Kluge to Cupps differ from LeaseAmerica's legal arguments. LeaseAmerica has not disavowed the contents of Kluge's letters, and under appropriate agency principles it is bound by the statements and representations in the letters.

Jeffrey A. Stonerock, in his law review article, *The Advocate-Witness Rule: Anachronism or Necessary Restraint?*, 94 Dick. L. Rev. 821, 849 (1990), reflected that "[f]or nearly 150 years the advocate-witness rule grew increasingly costly for the client. Model Rule 3.7 as drafted attempts to reverse this trend. Whether the courts will apply it as drafted remains to be seen." We recognize the trial court's concern over the possible confusion of the roles of advocate and witness but, based on the record, we find no substantial basis for the disqualification. We believe our ruling is in accord with the intention of the drafters of the Model Rules.

Nothing was presented to the trial court showing Lease-America's witnesses would testify inconsistent with the statements of Kluge's letters. There was nothing contractual about the interchange prior to the repossession of the motor homes. Stewart has failed to show Kluge's testimony is necessary, that it would be material to the issues to be resolved, that the evidence could not be obtained elsewhere, or that it would be potentially prejudicial to LeaseAmerica. Mere speculation is not a sufficient basis for an order to disqualify an attorney.

Stewart's contention that LeaseAmerica has abandoned its argument that the trial court failed to hold an evidentiary hearing on the disqualification motion is without merit. The lack of any factual basis for the disqualification is LeaseAmerica's principal argument on appeal. Explicit in that argument is the contention that no evidentiary basis exists for the disqualification.

The trial court's order disqualifying Kluge as LeaseAmerica's trial counsel is reversed.