**UTILIMASTER CORPORATION,**
Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 71T10–1008–TA–43.

Tax Court of Indiana.

April 17, 2012.

---

Dan R. Dunbar, Robert A. Romack, Dunbar & Romack, Greenwood, IN, Franklin, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jonathan E. Lamb, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON RESPONDENT'S MOTION TO DISQUALIFY PETITIONER'S ATTORNEYS

WENTWORTH, J.

This matter comes before the Court on the Indiana Department of State Reve-

nue's (Department) motion to disqualify Utilimaster Corporation's (Utilimaster) attorneys pursuant to Indiana Professional Conduct Rule 3.7, the Advocate–Witness Rule. In order to grant the Department's motion, the Court must find, as a preliminary matter, that Utilimaster's attorneys are likely to be necessary witnesses at trial. The Court finds they are not.

## BACKGROUND

Utilimaster manufactures commercial vehicles in Elkhart County, Indiana. On February 26, 2010, it filed a claim with the Department seeking a refund of the $17,943.65 in Indiana gross retail (sales) and use tax it remitted on purchases of natural gas between June 1, 2008 and December 31, 2009 (the period at issue).

Utilimaster's refund claim explained that during the period at issue, it used several sealants and adhesives in its manufacturing process that required an ambient air temperature of between 60 and 80 degrees Fahrenheit to properly cure. Utilimaster asserted that because it purchased and used natural gas to maintain that ambient air temperature, those purchases were not subject to taxation pursuant to the "predominate use exclusion" contained in Indiana Code § 6–2.5–4–5.[1] To that end, Utilimaster's refund claim stated:

> Utilimaster ... with assistance from ROAR Consulting LLC [ (ROAR) ], calculated the amount of natural gas needed for use in its production process. ... The attached utility study shows that production equipment uses more than fifty percent (50%) of the natural gas. Thus, Utilimaster meets the predominate use test.[2]

(Resp't Mot. Disqualify Pet'r Att'ys (hereinafter "Resp't Disqualify Mot."), Ex. E at 1, 3 (footnote added).) The refund claim was signed by Robert A. Romack, ROAR's president who, along with Dan R. Dunbar, ROAR's vice-president, was granted power of attorney by Utilimaster to act on its behalf before the Department regarding all sales and use tax issues during the period at issue. (*See* Resp't Disqualify Mot., Exs. B–D.)

On June 10, 2010, the Department granted Utilimaster's refund, but for the reduced amount of $2,951.69. Consequently, on August 24, 2010, Utilimaster filed an appeal with this Court, stating it had conducted a utility study calculating the "ratio of heated square footage where manufacturing takes place to overall building square footage." (Pet'r Pet. ¶¶ 13–14.) Utilimaster asserted that the utility study demonstrated its facility's square footage was predominately used in production and that its purchases of natural gas therefore qualified for Indiana Code § 6–2.5–4–5's sales tax exclusion. (Pet'r Pet. ¶ 15.) That same day, Romack and Dunbar en-

---

1. Indiana Code § 6–2.5–4–5 provides that a public utility's sales of natural gas to customers that use it in their manufacturing process are excluded from sales tax. *See* IND.CODE § 6–2.5–4–5(a)–(c) (2009). "However, th[e] exclusion ... only applies if the [natural gas is] consumed as an essential and integral part of an integrated process that produces tangible personal property and those sales are separately metered ... or[,] if those sales are not separately metered[, the natural gas is] predominately used by the purchaser for [manufacturing]." I.C. § 6–2.5–4–5(c).

2. The website for ROAR Consulting, LLC (ROAR) states that it is an Indiana firm that provides "federal and multistate tax consulting and compliance services, including, but not limited to, compliance, audit defense, reverse audits, projection agreements, and utility studies." (*See* Resp't Mot. Disqualify Pet'r Att'ys (hereinafter "Resp't Disqualify Mot."), Ex. B at 1.)

tered their appearances as Utilimaster's counsel of record.[3]

After the Department's counsel entered an appearance and filed a responsive pleading, the Court established various case management deadlines. The deadline for the parties to complete discovery was August 29, 2011. During discovery, the Department's counsel served Utilimaster with requests for production of documents, requests for admissions, and interrogatories, but did not seek to conduct any depositions.

On August 29, 2011, the day discovery closed, Utilimaster responded to the Department's discovery requests. Utilimaster objected to nearly all of the requests, stating generically and without explanation that the information sought was already in the Department's possession or that the requests were "oppressive," "unduly burdensome," and "ambiguous." (*See generally* Pet'r Gen. Objections; Pet'r Resp. Resp't First Set Interrog.; Pet'r Resp. Resp't First Req. Produc. Docs.)

On October 6, 2011, the Department filed a motion to reopen discovery. The motion stated that three days earlier, the Department's counsel met with Utilimaster's attorneys in an attempt to resolve some of their discovery disputes and, during that meeting, "Romack and Dunbar admitted that [the utility study had been] conducted by ROAR[.]" (Resp't Mot. Reopen Disc. (hereinafter "Resp't Disc. Mot.") ¶ 3.) Consequently, the Department maintained that discovery should be reopened so that it could have an opportunity to depose Romack and Dunbar as ROAR consultants. (Resp't Disc. Mot. ¶ 6.) The very next day and before the Court could rule on the motion to reopen discovery, the Department filed a motion to disqualify Romack and Dunbar as Utili-

master's attorneys, pursuant to Indiana Professional Conduct Rule 3.7. The Department's motion sought to disqualify Romack and Dunbar on the basis that, as drafters of the utility study, they would be necessary witnesses at trial. (*See* Resp't Disqualify Mot. ¶¶ 1–9.)

The Court conducted a hearing on the Department's motions on November 10, 2011. Additional facts will be supplied as necessary.

## LAW

■ Indiana Professional Conduct Rule 3.7 provides that a lawyer shall not act as advocate at a trial in which he is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Ind. Professional Conduct Rule 3.7(a). The official comments to the rule explain the rationale for the prohibition:

[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. [Thus, i]t may not be clear [to the trier of fact] whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Prof. Cond. R. 3.7, Cmt. 2. Concern about confusing the trier of fact, however, is more appropriate in the context of a jury trial than in a bench trial. Indeed:

[w]hat might very well constitute prejudicial error in the form of testimony

---

**3.** In addition to their consulting practice, Romack and Dunbar are attorneys licensed to practice law in Indiana and have their own law firm, "Dunbar & Romack."

given before a jury does not necessarily constitute prejudicial error in a trial to the court. It must be remembered that a trial judge is presumed to know the intricacies and refinements of the rules of evidence and that he sifts the evidence and weighs it in the light of his legal experience and expertise. He is thus able to separate the wheat from the chaff, ignoring the extraneous, the incompetent and the irrelevant[.]

*King v. State,* 155 Ind.App. 361, 292 N.E.2d 843, 846–47 (1973).

■ Notwithstanding the purpose of Rule 3.7, courts have recognized that litigants sometimes improperly use the rule as a means to gain a tactical advantage in litigation. *See Beller v. Crow,* 274 Neb. 603, 742 N.W.2d 230, 234 (2007). For example, " 'the power to call opposing counsel as a witness could be employed in a manipulative way to foist upon that lawyer the role of advocate-witness and thereby drive the lawyer from the case.' " *LeaseAmerica Corp. v. Stewart,* 19 Kan.App.2d 740, 876 P.2d 184, 191 (1994) (citation omitted). As a result,

> [w]here one party argues that an opponent's attorney is a necessary witness and moves to disqualify that attorney ... courts [will] view the opponent's asserted need to call the attorney more skeptically and must be concerned about the possibility that the motion to disqualify is an abusive tactic [intended] to hurt the opponent's ability to pursue his case.

*Harter v. Univ. of Indianapolis,* 5 F.Supp.2d 657, 663 (S.D.Ind.1998) (citations omitted). *See also Tucker v. Am. Int'l Group, Inc.,* No. 3:09–CV–1499, 2012 WL 314866, at *13 (D.Conn. Jan. 31, 2012) (stating that courts are " 'leery of turning trial counsel in the case before them into subpoenaed witnesses, because too often it is an effort to harass and intimidate and make trouble for a party by going after the lawyer' ") (citation omitted).

## ANALYSIS

■ The threshold question under Rule 3.7 is whether Utilimaster's attorneys are likely to be "necessary" witnesses. *See* Prof. Cond. R. 3.7; *Knowledge A–Z, Inc. v. Sentry Ins.,* 857 N.E.2d 411, 418 (Ind.Ct. App.2006), *trans. denied.* Accordingly, the Department must make a two-pronged showing: first, it must show that the testimony it seeks to elicit from Utilimaster's attorneys is more than marginally relevant to the issue or issues being litigated; second, it must show that their testimony will result in evidence that cannot be obtained elsewhere. *See Knowledge A–Z,* 857 N.E.2d at 418 (citations omitted).

The issue to be litigated in this case is whether Utilimaster's purchases of natural gas are excluded from sales tax under Indiana Code § 6–2.5–4–5. The parties agree that the facts central to this inquiry are: 1) the square footage of Utilimaster's facility; 2) how much of that square footage was used in its manufacturing process; and 3) the temperature at which that square footage was kept. (*See* Resp't Mot. Compel, Ex. A at 2; Mot. Disqualify Hr'g Tr. (hereinafter "Hr'g Tr.") at 46.)

■ In its motion to disqualify, the Department argues that the validity of Utilimaster's utility study is at issue, and therefore, it is necessary to call Romack and Dunbar, the drafters of the study, as expert witnesses during trial. (*See, e.g.,* Resp't Disc. Mot. ¶ 4.) In calling them, the Department explains that it intends to elicit testimony regarding their "subjective mindset" in conducting the utility study:

> As consultants, when they went out to Utilimaster's plants, what questions were asked of Utilimaster, what was the interactive process between the two? ROAR [ ] holds itself out as an expert

consulting firm that does natural gas utility studies.... [What] were th[eir] methodologies—did they diverge [from their methodologies] for Utilimaster[?] ... For instance, when they discussed square footage, did ROAR [ ] ever consider cubic square footage? ... [W]ith the temperatures, did they consider where the plants already would've been, so if the minimum temperature threshold was 60 degrees ... did [ROAR] consider the temperature that was raised from 60 to let's say 72[?]

(Hr'g Tr. at 9–11.) The Department states "it would be hard to argue" that this subjective mindset testimony is not relevant to the issue being litigated because it "is important to proving [the Department's] case and disproving Utilimaster's case." (Hr'g Tr. at 5, 9.) The Department further claims that because only Romack and Dunbar can testify about their subjective mindset, their testimonial evidence cannot be obtained from any other source. (*See* Hr'g Tr. at 11–14, 37.) The Department's argument, however, misses the mark.

Testimony from Utilimaster's attorneys about what their "subjective mindset" was when they conducted the utility study is irrelevant to determining whether Utilimaster's natural gas purchases are entitled to the predominate use exclusion. Utilimaster's utility study does nothing more than provide the total square footage of Utilimaster's facility and the portion of that square footage that is used in Utilimaster's manufacturing process. (*See* Resp't Resp. Pet'r Mot. Deny Resp't Mot. Disqualify Pet'r Att'ys, Ex. A at 5 (the utility study).) Because this information is readily ascertainable, objective numbers, the only relevant testimony from Utilimaster's attorneys would concern the accuracy of those numbers. *See, e.g., State v. Int'l Bus. Machines Corp.*, 964 N.E.2d 206, 212–13 (Ind.2012) (Sullivan, J., concurring (explaining that "state of mind" testimony should not be compelled when it bears no relevance to the issue being litigated)). Such testimonial evidence could be elicited, however, from other sources, such as Utilimaster employees knowledgeable about its manufacturing process, the size of its facility, and the use of its space. In fact, Utilimaster explains that it did not list the utility study on its pre-trial exhibit list because it intended to prove the facts documented in it by its own employees' testimony. (*See* Hr'g Tr. at 49.) Therefore, Utilimaster's attorneys are not necessary witnesses pursuant to Professional Conduct Rule 3.7.

■ The Court further notes that the Department's motion to disqualify must fail because Professional Conduct Rule 3.7 has not been used for its intended purpose of preventing the Court from being misled or confused about Utilimaster's attorneys' role. Indeed, during the Court's hearing, no concern was ever expressed that the Court could or would be confused about whether Utilimaster's attorneys, if called to testify, were acting as witnesses or as advocates. (*See generally* Hr'g Tr.) Instead, throughout the proceeding, the argument focused exclusively on why additional discovery was needed. (*See* Hr'g Tr. at 9, 16, 19–20, 25–26, 29–30, 70.) More specifically, the Department claimed that it had been "ambushed" by Utilimaster's attorneys when they revealed that ROAR conducted the utility study *after* discovery was closed and their depositions could no longer be taken. (*See* Hr'g Tr. at 11–19, 29–30.) Without an opportunity to depose them now, the Department argues that it will be "unfairly prejudiced" because it will not be able "to learn about and attack their consulting work." (*See* Hr'g Tr. at 4.) The facts do not support this claim.

Utilimaster filed its refund claim with the Department on February 26, 2010, along with a copy of the power of attorney granting Romack and Dunbar the authority to act on its behalf before the Department. Utilimaster's refund claim proclaimed that "with assistance from ROAR," it conducted a utility study to support its position. (Resp't Disqualify Mot., Ex. E at 1, 3.) Moreover, the refund claim was signed by Romack as ROAR's president. Thus, from that date, the Department should have known that ROAR, Romack, and Dunbar played a role in formulating the utility study and refund claim.

The Department's current counsel came into possession of these documents when he entered his appearance in this case on June 1, 2011, nearly three months before discovery closed. While he may not have had a complete understanding of the role of Utilimaster's attorneys in formulating the utility study and refund claim at that time, he had ample evidence to alert him that he may want to conduct depositions to know more. Nonetheless, he never requested depositions from Romack, Dunbar, or anyone on Utilimaster's witness list. Instead, he filed a motion to reopen discovery to obtain evidence he had not timely sought before discovery closed, including evidence to assist him in determining whether Romack and Dunbar were necessary witnesses. (*See* Hr'g Tr. at 24–26, 70.) On the very next day, however, the Department sought to disqualify Utilimaster's attorneys altogether.

The Department has invoked Professional Conduct Rule 3.7 in an attempt to conceal its failure to timely pursue discovery as well as to remove Utilimaster's attorneys from the case, calling their professionalism into question. The Court will not countenance the Rule's abuse as a procedural weapon by invading Utilimaster's right to counsel of its choice. *See Harter,* 5 F.Supp.2d at 663 (citation omitted); *LeaseAmerica Corp.,* 876 P.2d at 192.

## CONCLUSION

For the foregoing reasons, the Department's motion to disqualify Utilimaster's attorneys is DENIED.[4] The Court will schedule this matter for a case management conference in a separate order.

SO ORDERED.

---

4. As indicated earlier, the Department also filed a motion to reopen discovery for the limited purpose of deposing both Romack and Dunbar in their capacity as ROAR consultants. (*See* Resp't Mot. Reopen Disc, (hereinafter "Resp't Disc. Mot.") ¶ 6.) Given the Court's rationale in denying the Department's motion to disqualify (*i.e.,* that the Department failed to effectively use the discovery time it had in the first place), the Court also DENIES the Department's motion to reopen discovery.